IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03187-LTB

**A'LA A. ALLAH** (aka **KIMANI WASHINGTON** # 161525),

    Plaintiff,

v.

**COLORADO DEPARTMENT OF CORRECTIONS**;
**RICK RAEMISCH**, Executive Director;
**JOHN FALK**, Warden;
**CHAPDELAINE**, Associate Warden; and
**JOHN DOE**, Officer of Offender Services, et al.

    Defendants.

## ORDER TO DISMISS

Plaintiff, A'la A. Allah, aka Kimani Washington, is an inmate currently incarcerated at the Sterling Correctional Facility (SCC) located in Sterling, Colorado. Acting *pro se*, he initiated this action by filing a Prisoner Complaint pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement. For the reasons set forth below, this action will be dismissed.

### A. Applicable Legal Principles

In the Prison Litigation Reform Act (PLRA), Pub.L. No. 104–134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims.

Specifically, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP), *i.e.*,

without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In addition, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

Further, the PLRA substantially amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e. In this regard, the PLRA amended section 1997e(c) to require the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *See* 42 U.S.C. § 1997e(c)(1).[1]

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 9). Moreover, his Complaint concerns prison conditions and is filed against officers and employees of a governmental entity. Thus, his Complaint must be reviewed under the authority set forth above.

---

[1] When reviewing a complaint for failure to state a claim, the Court may also consider documents attached to the complaint as exhibits. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.")).

In reviewing complaints under these statutory provisions, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations ... enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" *Bell Atlantic Corp.*, 550 U.S. at 555. Moreover, a legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). *See Conkleton v. Raemisch*, Civil No. No. 14–1271, ___ Fed. App'x ___, 2015 WL 794901 (10th Cir. Feb. 26, 2015) (upholding in part District Court's dismissal as frivolous of prisoner civil rights complaint); *Ross v. Romero*, 191 Fed. App'x 682 (10th Cir. 2006) (affirming district court's *sua sponte* dismissal of prisoner's civil rights complaint under 28 U.S.C. § 1915(b).

The Court must construe the Complaint liberally because Plaintiff is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If a complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, a court should not act as a *pro se* litigant's advocate. *See id. Sua sponte* dismissal is proper when it is patently obvious that plaintiff

could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile. *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (internal quotations omitted).

### B. Plaintiff's Claims

Plaintiff is a Muslim inmate who legally changed his name from Kimani Washington to "A'la A. Aziz-Allah." He objects to Colorado Department of Correction (CDOC) regulation A.R. 950-06, which provides that inmates shall be identified by the name on their commitment document. A.R. 950-06.IV.A. CDOC policy requires that any legal name change ordered by a court shall be recorded only as an AKA. A.R. 950-06.IV.B. Plaintiff claims that this policy is a violation of his rights as protected by the First and Fourteenth Amendents of the United States Constitution as well as his rights under Colorado Revised Statue 24-60-1602 Article IV Section (e).

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986). In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393–394 (1989) (internal quotations and citations omitted). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id*.

4

1.      First Amendment

Plaintiff first claims that the CDOC regulation violates his rights under the First Amendment. The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). It is well-settled that "[i]nmates ... retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Yet such protections are not without reasonable limitations. The Supreme Court has cautioned that prison inmates are also subject to the "necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id*. Accordingly, the Court has held that "a prison regulation imping[ing] on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests." *Id*. at 349.

The CDOC policy provides that all DOC records and official documents be maintained in the committed name and DOC registration number and the religious name will be reflected as an alias or A/K/A. Thus, the CDOC regulation doesn't forbid the use of Plaintiff's religious name. Instead, he simply has to include his committed name alongside his religious name. The Court of Appeals for the Tenth Circuit specifically has held that CDOC regulation 950-06 does not violate the Free Exercise Clause of the First Amendment. *Ali v. Wingert*, 569 F. App'x 562, 565 (10th Cir. 2014) (the Court further held that the policy did not violate the Religious Land Use and Institutionalized Persons Act). This ruling is in accordance with every other court that has reviewed similar corrections policies requiring prisoners to use their legally changed name as an "aka." *See, e.g.*, *Hakim v. Hicks*, 223 F.3d 1244 (11th Cir. 2000) ( Department of Corrections' compliance with

a dual-name policy would resolve free exercise claim (citing *Mujihadeen v. Compton*, 627 F. Supp. 356 (W.D. Tenn. 1985) (prison policy requiring both committed and Muslim name to appear on inmate I.D. card did not violate inmate's Free Exercise Clause rights)); *Fawaad v. Jones*, 81 F.3d 1084, 1085–1087 (11th Cir. 1996) (prison policy which required Islamic inmate who had legally changed his name while in prison to use both his legal name and name under which he was committed on all incoming and outgoing mail did not violate inmate's right to freely practice his religion under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1); *Malik v. Brown*, 16 F.3d 330, 334 (9th Cir. 1994) ("Using both the religious and the committed name is a satisfactory alternative means for an inmate to freely exercise his religion"); *Salaam v. Lockhart*, 905 F.2d 1168, 1174–1175 (8th Cir. 1990) ("The a/k/a designation has been recognized by several federal courts as a reasonable alternative to prisons' committed name policies."); *Felix v. Rolan*, 833 F.2d 517, 519 (5th Cir. 1987) (holding First Amendment not violated in situation in which "prison has not refused to recognize [inmate]'s new name, it merely requires that for administrative efficiency he include his former name as an identifying alias"); *Ephraim v. Angelone*, 313 F. Supp 2d 569, 575 (E.D. Va. 2003) ("When an inmate legally changes his name for religious purposes, the Department of Corrections, upon notice of such a change, is required to add the new name to the prison file. However, the Department of Corrections is not required to replace the inmate's old name with the new one.") (citations omitted); *Thacker v. Dixon*, 784 F.Supp. 286, 304 (E.D.N.C. 1991) (plaintiff can use his legal name; however, he must provide his committed name to insure that his records are kept in their proper order); *Riggins v. Clarke*, 403 F. App'x 292, 294 (9th Cir. 2010) (State corrections officials' enforcement of policy requiring that all prisoners use name under which they were committed to custody before any other official or religious name on all incoming and outgoing

6

correspondence did not violate prisoner's First Amendment rights); *Malik v. Clarke*, No. C07–5160 RJB/KLS, 2009 WL 990874 at *8 (W.D. Wash. Apr. 13, 2009) (DOC has legitimate penological interests in requiring Plaintiff to use his committed name first on his incoming mail).  Thus, as a matter of law, Plaintiff's allegations that Defendants violated his constitutional rights by requiring the use of both his religious name and his commitment name fails to state a claim to which relief can be granted.  This, his First Amendment claim will be dismissed.

3.      Fourteenth Amendment

Plaintiff also claims that Defendants violated his rights as protected by the Fourteenth Amendment, which prohibits the state from depriving an individual of a constitutionally protected interest without due process of law.  The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government.  The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; the "substantive" aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression.  *Daniels v. Williams*, 474 U.S. 327, 329-33 (1986) (citations omitted.)

The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests."  *Hewitt v. Helms*, 459 U.S. 460 (1983); *Morrissey v. Brewer*, 408 U.S. 471 (1972).  The types of protected liberty interests are not unlimited.  The interest must rise to more than an abstract need or desire and must be based on more

than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's claims is whether Defendants' actions impacted a constitutionally-protected interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. *Hewitt*, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, *Morrissey*, 408 U.S. at 471, and the revocation of probation, *Gagnon*, 411 U.S. at 778.

The United States Supreme Court has recognized that "the term 'liberty' in the Due Process Clause extends beyond freedom of physical restraint." *Michael H. v. Gerald D.*, 491 U.S. 110, 121 (1989). The concept of "liberty" encompasses "those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men," and such privileges "may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect." *Meyer v. State of Nebraska*, 262 U.S. 390, 399 (1923). However, to avoid the unchecked creation of new constitutional rights, the Supreme Court has held that the interest or privilege being asserted must be one traditionally protected by society and "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Michael H. v. Gerald D.*, 491 U.S. at 121.

It is unclear whether the Due Process Clause creates an inherent right to compel the

government to accept a prisoner's legally-changed name. *See Coffey v. Daniels*, Civil No. 12-384, , 2014 WL 1158874 (M.D. Ga. Mar. 21, 2014) ("The Court has found no case law which would indicate that Plaintiff has a liberty interest in using a name other than the name under which he was convicted, even if his name was legally changed after conviction."); *Brown v. Cooke,* Civil No. 2009 WL 641301, 8 (D. Colo. Mar. 9, 2009) ("While the common law has traditionally recognized a person's right to assume whatever name they choose, the common law did not require that the world at large accept that name."). Even assuming that it does create such a fundamental right, it is also recognized that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Court's confronted with this issue uniformly have held that similar policies satisfy the *Turner* test. *See, e.g.*, *Fawaad v. Jones*, 81 F.3d 1084, 1087 (11th Cir. 1996) ("The state's legitimate interest in prison security requires an efficient system of identification and administration of prisoners within its custody. So, while the state cannot reasonably deny prisoners privileges simply because they have chosen to adopt a new name, the use of their "committed name," as an alias, for the purpose of identification of the prisoner, does not of itself violate the prisoner's constitutional rights.") (quoting *Felix*, 833 F.2d at 519); *Strope v. Gibbens*, Civil No. 01–3358, 2003 WL 1906458 (D. Kan. Apr. 17, 2003) (no due process violation from statute requiring inmates to use committed name on mail); *Kirwan v. Larned Mental Health*, 816 F. Supp. 672 (D. Kan. 1993).

Thus, even if an inmate has a fundamental right to require prison officials to acknowledge a legally-changed name, the state's legitimate interest in prison security, including an efficient identification and administration of prisoners within its custody, which requires use of an inmate's committed name, does not result in a violation of the prisoner's constitutional rights under *Turner*.

9

Accordingly, Plaintiff can succeed under the Due Process Clause only if he can demonstrate that state law has created a constitutionally-protected liberty interest.

In this regard, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a state-created liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483 (emphasis added). Relevant factors to consider when determining whether conditions of confinement implicate a protected liberty interest include: 1) whether the conditions relate to and further a legitimate penological interest, such as safety or rehabilitation; 2) whether the conditions of placement are extreme; 3) whether the placement increases the duration of confinement; and 4) whether the placement is indeterminate. *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012). Further, "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007) (citation omitted).

In the case at bar, the CDOC name identification policy relates to and furthers legitimate penological interests as discussed above. In addition, the condition of requiring an inmate to use both names is not extreme. Moreover, this condition neither increases the duration of an inmate's sentence nor results in any indeterminate placement. Thus, Plaintiff does not have a protected liberty interest in requiring prison inmates to allow him to solely use his religious name without his committed name. Accordingly, Plaintiff has failed to state a violation of his procedural Due Process

rights.

The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. The Supreme Court has declined to set forth a precise rule outlining the contours of "arbitrary" conduct. Notwithstanding, in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the court instructed that the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that "shocks the conscience." In so holding, the court reiterated its long standing jurisprudence that only the most egregious official conduct can be said to be "arbitrary" in the constitutional sense. *Id*. at 848-850. The court further instructed that courts should employ a variable range of culpability standards, dependant upon on the circumstances of the case, in determining whether certain actions rise to a constitutionally "shocking" level. *Id*. *See also Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression).

Liberally construed and taken as true, Plaintiff does not state a violation of his substantive due process rights with respect to the CDOC regulation. *Accord Wolfe v. Beard*, Civil No. 10-2566, 2010 WL 5173199 (E.D. Pa. Dec. 9, 2010).

**D. State Law Claim**

Having dismissed Plaintiff's claims arising under federal law, the Court next addresses the issue of whether it should exercise supplemental jurisdiction over his remaining state-law claim alleging a violation of Colorado Statute 24-60-1602. While courts may exercise supplemental jurisdiction over state law claims if there is otherwise a jurisdictional basis for doing so, 28 U.S.C.

§ 1367(c)(3) states that a court may decline to exercise jurisdiction over such claims if "the district court has dismissed all claims over which it has original jurisdiction." When § 1367(c)(3) is implicated in the Tenth Circuit, courts are advised to dismiss pendent state law claims " 'absent compelling reasons to the contrary.' " *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's grant of summary judgment on state law claims)); *Endris v. Sheridan Cnty. Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed"). Finding no compelling reason here to retain jurisdiction, the Court will dismiss Plaintiff's state-law claim without prejudice. *See* Colo. Rev. Stat. § 1380–111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (interpreting 28 U.S.C. § 1367(d) as tolling the statute of limitations while claim is pending in federal court).

### E. Conclusion

The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Beard v. Banks*, 548 U.S. 521 (2006); *Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

Accepting the facts in the complaint as true, but not the conclusory statements, the Court concludes that Plaintiff has not alleged sufficient facts to state a plausible federal constitutional violation against any named Defendant. Moreover, allowing Plaintiff to amend his complaint would be futile. Consequently, this action will be dismissed. Accordingly, it is

**ORDERED** that the Complaint and this action are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A and/or 42 U.S.C.A. § 1997e. It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Plaintiff files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado, this  22nd  day of   April      , 2015

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court